Okay, Ms. Rue. May it please the Court, good afternoon, my name is Kathy Rue, I represent Alix and Tina Washington, they are the appellants in this matter, and I appear before this Court today to request relief on behalf of my clients, the Washingtons. I wish to address two issues before the Court today. First issue is that the Washingtons do state a cognizable claim for relief, and their claims are plausible. The second issue is that the Washingtons are not bound by the move-out agreement as a release of all of their clients, so I ask this Court today, in reviewing this case de novo, to deny Bank of America's 12B6 motion, and to remand this case back to the District Court, to allow my clients to amend and supplement their complaint, and proceed to a trial on the merits of their lawsuit. I wish to reserve five minutes for rebuttal. On my first issue, that the Washingtons do state a cognizable claim for relief, and that their claims are plausible, I would argue to this Court that the Washingtons provided a detailed and lengthy complaint, enumerating numerous facts that described the events that led up to and surrounded the signing of the move-out agreement, as well as the wrongful foreclosure that Bank of America undertook against the Washingtons. The Washingtons further based all of their claims in their complaint upon the facts that they stated in their amended complaint. In reviewing the Washingtons' complaint to determine whether or not it states a cognizable claim, this Court must use the following standards. First, this Court must accept all well-pleaded facts as true, and viewing those facts in a light most favorable to the plaintiffs. The Fifth Circuit Court of Appeals issued that standard in Stokes v. Gann and in N. Ray, Louisiana, Crawfish Producers. The second standard that the Court of Appeals should apply in this case is the Twombly standard, which does not require a heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face. Now, to plead a plausible claim, the Court in Twombly explained that a plaintiff must plead enough factual matter to show that its right to relief is raised above a speculative level. The Twombly Court further stated that only when the plaintiff satisfied Federal Rule 8.8 by providing the defendant fair notice of what the claim is and the grounds upon which it rests did it satisfy this plausible standard. Twombly clarified and further provided guidance in terms of applying this standard of plausibility. What it went on to state was that asking for plausible grounds does not impose a probability requirement. In other words, the Washingtons are not required at this point, at this stage in the proceedings to prove that they're going to probably prevail. You only need to show plausibility, isn't that right? That is correct, Your Honor. And we're pretty familiar with that. I don't want to cut off your well-prepared argument, but if you want to move on to basically beyond those standards, I think we know what they are, and it'll save you some time. Very well, Your Honor. I mean, you're stating it very well, and it's perfectly accurate what you're saying. Thank you. I just wanted to also iterate that the Iqbal Court in Ashcrawl v. Iqbal clarified the Twombly standard as well, and has set forth a two-pronged test for the Court to use, that the first is that it's a plausible claim, except for legal conclusions, unless they're supported by factual allegations, and second, that again, a plausible claim must be stated by the complaint. Court further explained that it's a plausible unless it talks about little green men on Mars or something like that. Something like that. I mean, that was the example that was given, as I remember. What's really important, in terms of the Iqbal opinion, is that the Court determined that this Court, in analyzing the plausibility factor or standard, is to use a context-specific analysis that requires the reviewing Court to draw on its judicial experience and use its common sense. And so, in looking at the Washington's complaint, you have a situation where they had applied for a loan modification on their homestead with Bank of America, who, at that time, they believed held their deed of trust and the promissory note for the mortgage on their property. And, after numerous communications with Bank of America, through telephone calls, through faxes, the Washingtons received responses that, follow-up later, check back later, your status hasn't changed, the loan modification is still being processed. And those were the responses that they received up until the time when their property was foreclosed upon. In fact, the Washingtons had received both verbal notification and written notification from Bank of America that, as long as the loan modification was in process, they would not foreclose upon the Washington's home. And that's what the Washingtons were relying upon, and they were waiting patiently to hear a result from Bank of America. They never got that result from Bank of America. What they got was a wrongful foreclosure on their homestead. And even though Bank of America knew that their loan modification had been approved, it never communicated that information to the Washingtons, despite their numerous requests and numerous communications about the status of the loan modification. Counsel, I don't want to speed ahead of you, but there is something called a move-out agreement in this case? Yes, Your Honor. I sure want to hear that explained away. Okay. After the Washington's homestead was foreclosed upon, they received eviction notices from Bank of America's agents stating that the eviction was in process and they needed to vacate the home. And the next action was that agents on behalf of Bank of America provided the Washingtons with a move-out agreement and requested that they signed it and provided them with an inducement, a monetary inducement, that if they vacated the house within 30 days, they may be able to give them some money and that they needed to do so under threat of eviction. So at this time, Mr. Washington had had major back surgery and was having mobility issues. They had not heard anything about the loan modification. They believed Bank of America's representations and reasonably assumed, since they were being presented, since their home had already been foreclosed upon and they were presented with that they should sign it because not to sign it would be delaying the inevitable. So they went ahead and signed it at that time. The problem with the move-out agreement is that it is a, it waives, the language in the And that's what's disputed in the Washingtons' complaint. The problem with the move-out agreement is that it's a question of fact whether or not they waived any of those claims. And so those facts must be heard and determined by a trier of fact at a trial on the merits. And that has not happened because their complaint was dismissed. And so in that connection is your argument that the agreement doesn't mean what it says? That is correct. Our argument is that the agreement is ambiguous. There's issues of conspicuousness. And the agreement may be determined to be invalid or void and not release any claims that the Washingtons have. But we don't know that until we get back to the trial court and have a trial on this matter. Ordinarily, waiver is a question of fact. And that is a holding that was determined by the Texas Supreme Court in the Teneco case. The Washingtons have challenged both their intent at the time they signed the move-out agreement and the substance of the move-out agreement. And they've challenged it by the facts that they've alleged in their complaint. And those facts go directly to the circumstances that are surrounding the move-out agreement. They go directly to the intent of the Washingtons at the time they signed the move-out agreement. And they go directly to the knowledge that Bank of America had at the time it pressured the Washingtons into signing the move-out agreement, but had not shared with the Washingtons. What about the question of the applicability of the move-out agreement? Anything that occurred after the date of the signing? Well, that speaks directly to Section 1542 of the Civil Code of the State of California. And the language of that statute is directly quoted in the move-out agreement. And what that language says is that a general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which, if known by him or her, meaning the creditor, must have materially affected his or her settlement with the debtor. And so what this language of this statute says is that the Washingtons, being the creditors of Bank of America, who are the debtors in this particular, in applying this particular statute, could not have released any future claims or any claims that they did not know about under the language, the clear language of this statute. Another problem with the move-out agreement being ambiguous is that it uses generic terms of creditor and debtor. And historically, in this specific business transaction between Bank of America and the Washingtons, the Washingtons had been the debtors and Bank of America had been the creditor. But when you look at the language of Section 1542, by using those generic terms, it's ambiguous who they're referring to in terms of which party is releasing claims. And so my client's position is that in terms of releasing any claims, they would have to be the creditor because it's the creditor who is owed the obligation by the debtor. And so it's the creditor who's going to be releasing claims. That particular argument isn't going to get you very far. Why don't you touch on anything else that you want to talk about in your last couple of minutes? On the move-out agreement, the paragraph directly below Section 1542 states that later discovered facts and shall be released. In other words, if the Washingtons discovered any additional facts after they signed this move-out agreement, those claims arising under those facts would be released and the release would remain valid. And that is contradictory to the language in 1542. And being contradictory and being ambiguous, those ambiguities should be construed against Bank of America and in favor of the Washingtons because Bank of America is the party who drafted the move-out agreement. In the Butler case, the court stated that when a party signs an agreement containing a waiver of its rights with respect to unknown claims under Civil Code 1542, the scope of what claims the party intended to release. And furthermore, that extrinsic evidence may be considered, not to vary or change the terms or modify the terms of the move-out agreement, but to ascertain the intent of the parties. And the only way to do that, again, is to go back to the trial court and have a trial of fact determine what are the facts and what was the Washingtons' intent. This court has consistently disfavored dismissal under Rule 12b-6 under the Mahoney case and has stated that the standard for dismissing a complaint is very high. All right. Thank you, Ms. Rue. You've saved your full five minutes for rebuttal. Ms. Jones? Good afternoon. May it please the Court. Connie Flores-Jones from Winston & Strong on behalf of the Appleby Bank of America. I'd just first like to start by addressing Ms. Rue's arguments regarding alleged ambiguities in the move-out agreement. None of that is in the pleadings or in the briefing that is before the Court today. If you review the first amended complaint, which is the operative pleading that was the subject of the motion to dismiss and the dismissal order, there's no mention whatsoever about any ambiguities in the move-out agreement. So I would ask the Court to disregard Ms. Rue's statements with respect to that issue. I want to address whether there was, in fact, a fraudulent inducement here, whether or not that's been properly pled or preserved. Let's get beyond that for the moment. But the bank did mislead, did it not, by not disclosing that a modification had been approved? Your Honor, going back to the pleadings, yes, she does allege that they were approved for but that's simply not the case. I'm not sure how familiar the Court is with how loan modifications work, but typically when a borrower defaults and they ask to be reviewed for a modification of their loan upon their default, they have to submit an application, submit financial information. Well, let's go back just a minute. We do get lots of these cases, so I think we're fairly familiar. You're free to fill in the gaps. So just to— Let's go back a minute. She's alleged that the bank had, in fact, secretly or without disclosing, approved the modification agreement. Is there anything in the record, as it exists now on appeal, that would contest that allegation at the 12B6 level? I do not believe there's anything in the record that would contest that because we were limited to the pleadings as they exist, and so therefore we were precluded from introducing new information. However, I will refer the Court to the move-out agreement itself, which states that the appellants waived all of their rights with respect to the servicing of the loan, with respect to the foreclosure of the property, with respect to any eviction proceedings, with respect to the property itself, with respect to personal property that was in the property. And so we've taken the position that the release was unequivocal and complete and is a full waiver of all of their claims, and the Court agreed. And I will point out that the appellants themselves attached the move-out agreement as an exhibit to the original complaint and the amended complaint. Yes, it is incorporated into the complaint as usual. Yes. And to be honest, I was prepared today to come in and address the duress issues that were raised in the appellant's briefs. Would you like me to address that? You can address whatever you like in response to what we've heard, as long as you don't repeat yourself or go outside the record. No, I'd just like to say that the Washingtons filed an original complaint with seven causes of action and then an amended complaint with seven causes of action. Nowhere in either of those complaints was there a claim for economic duress. And we moved to dismiss the complaint, the first amended complaint, based on the release itself. We also had alternate grounds for dismissal, including that the claims of fraud were not pled with particularity, that there was no wrongful foreclosure because the property sold for more than 60% of its fair market value. There was no breach of contract because they did not identify specific provisions in any contract that they alleged were breached. And their default, in and of itself, acts as a waiver of their claim for a breach of contract. We had a statute of limitations argument. We had numerous defenses that we raised in our motion to dismiss. And ultimately, the district court relied primarily on the move-out agreement and construed that to be a full waiver of all claims, including the fraud claims. So if you read the move-out agreement, they agreed to a full release of claims, whether existing at that time or existing in the future. Excuse me. The agreement itself was written in plain language. The release was unequivocal in its terms and was not ambiguous. And today is the first time that I've ever heard any argument that the agreement itself was ambiguous. The release applies regardless of whether the appellants later discovered facts that were different from what they knew at the time that they executed it. And that's the whole purpose of a release. You get a release to say, okay, you know, you're signing this agreement. You're releasing all of your claims. I mean, without that release, what is the purpose of the agreement itself? They acknowledged and agreed as part of the agreement that they were freely and voluntarily signing it, that they had no other inducements, that they had an opportunity to consult with counsel, that they read and understood the terms, and they received consideration. And so the district court determined that the move-out agreement constituted an unequivocal waiver of all of their claims and rightfully dismissed the first amended complaint. And are there any questions? All right, thank you, Ms. Jones. Okay. Do we have time for a vote? All right. I would just like to point out that in the brief that I submitted on behalf of my clients, I did bring up the fact that the move-out agreement is an unconscionable agreement and that there was no meeting of the minds in terms of what the clients were releasing at the time that they signed it. Also, I would like to point out that this case is before this court as a de novo review, and this court is not bound nor should it consider the decision nor the reasoning of the district court in deciding this matter. The foreclosure that was done by Bank of America, it has been conceded by them that there's an issue as of the chain of title, because at the time that they foreclosed it, they were not able to show a chain of title at the time they foreclosed on the Washington's home. Then after the foreclosure, they transferred the title to the VA. A year after that, the VA rejected the title and sent the title back to Bank of America. Bank of America never disclosed this information to my clients. Instead, what they did without my client's consent or knowledge was they took it upon themselves to act as the Washington's agent and took the house and placed it back into the Washington's name and then foreclosed upon the house a second time. This second time, they did not provide a move-out agreement nor require any release, because according to Bank of America, they had already obtained releases of any future claims. So they felt at this point they could do whatever they wanted. They were protected by this release. That behavior is unconscionable, and it violates fundamental public policy. It would be a miscarriage of justice for this court to determine that the Washington's waiver applies to all claims and to forbid them to amend their complaint to add any new claims or to supplement their complaint. Based on the facts that they've listed, they've raised the issue of their intent, and that is sufficient to put Bank of America on notice as to what their claims are, and it's also sufficient to meet the plausibility standard, which is that these facts are believable. They're supported by signed public records, which are the substitute trustees' deeds. In conclusion, we respectfully request that this court determine that the Washington's are not only correct on the law, but that they're also seeking a just and equitable result, which is their day in court. That's why they filed their complaint. That is the only way for them to obtain appropriate civil redress for their claims. Therefore, we respectfully request that this honorable court of appeals, in reviewing this case de novo, deny Bank of America's 12B6 motion and remand this case back to the district court to allow the Washington's to amend and supplement their complaint and proceed to a trial on the merits of this lawsuit. Thank you, Your Honors. All right, thank you. Ms. Rue, your case is under submission, and the court at this time will take a very brief recess.